IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **Pragmatus Telecom, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**Volkswagen Group of America, Inc.,**<br><br>Defendant. | Civil Action No. 12-1559-RGA<br><br>**Master Docket No. 12-1533-RGA** |
| **Pragmatus Telecom, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**Reed Elsevier US Holdings Inc.,**<br><br>Defendant. | Civil Action No. 12-1684-RGA |
| **eGain Corporation,**<br><br>Plaintiff,<br><br>v.<br><br>**Pragmatus Telecom, LLC,**<br><br>Defendant. | Civil Action No. 13-897-RGA |

MEMORANDUM OPINION

Michael Farnan, Esq., Farnan LLP, Wilmington, DE; David L. Alberti, Esq. (argued), Feinberg Day Alberti & Thompson LLP, Menlo Park, CA; Marc C. Belloli, Esq. (argued), Feinberg Day Alberti & Thompson LLP, Menlo Park, CA; Clayton Thompson, Esq. (argued), Feinberg Day Alberti & Thompson LLP, Menlo Park, CA, attorneys for Plaintiff Pragmatus Telecom, LLC.

Jonathan A. Choa, Esq., Potter, Anderson & Corroon, LLP, Wilmington, DE, attorney for Defendants Reed Elsevier US Holdings Inc.

Jack B. Blumenfeld, Esq., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE; Steven F. Meyer, Esq. (argued), Locke Lord LLP, New York, NY, attorneys for Defendant Volkswagen Group of America, Inc.

Jonathan A. Choa, Esq., Potter, Anderson & Corroon, LLP, Wilmington, DE; David A. Jakopin, Esq. (argued), Pillsbury Winthrop Shaw Pittman LLP, Palo Alto, CA, attorneys for Declaratory Judgment Plaintiff eGain Corporation.

September 9, 2014

ANDREWS, U.S. District Judge:

Pending before this Court is the issue of claim construction of disputed terms found in U.S. Patent Nos. 6,311,231 ("the '231 patent"), 6,668,286 ("the '286 patent"), and 7,159,043 ("the '043 patent") (collectively, "the patents in suit").[1]

## I. BACKGROUND

Plaintiff Pragmatus Telecom, LLC brought suit against multiple Defendants asserting infringement of the patents in suit. Currently, the only Defendants remaining are Reed Elsevier US Holdings Inc., Frontier Communications Corporation, Volkswagen Group of America, Inc., and AT&T Inc.[2] Additionally, eGain filed a declaratory judgment action against Pragmatus based upon eGain's provision of services to defendants in the underlying suits. For simplicity, eGain will be referred to as a defendant. The Court has considered the parties' Joint Claim Construction Brief. (D.I. 401 in 12-1533). The Court heard oral argument on September 4, 2014.

## II. LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324). When construing patent claims, a matter of law, a court considers the literal

---

[1] The '043 patent is a continuation of the '286 patent, which is a continuation of the '231 patent. The patents therefore share the same specification.
[2] Defendant AT&T Inc. has stipulated to a stay. (D.I. 451 in 12-1533). Defendant Frontier has stipulated to a stay pending settlement. (D.I. 440 in 12-1533).

1

language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotations and citations omitted).

Furthermore, "the words of a claim are generally given their ordinary and customary meaning . . . [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e. as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1312-13 (internal citations and quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314 (internal citations omitted).

A court may consider extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises," in order to assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art and how the invention works. *Id.* at 1317-19 (internal quotation marks and citations omitted). However, extrinsic evidence is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

Finally, "[a] claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa'*

2

*per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (internal quotation marks and citation omitted).

## III. CONSTRUCTION OF DISPUTED TERMS

1. "remote help option"

    a. *Plaintiff's proposed construction*: "A portion of a user interface that may be selected by the customer to obtain help."

    b. *Defendants' proposed construction*: "A selectable user interface included on a page appearing on a computer screen that may be selected by the customer in order to initiate seeking help from the call center."

    c. *Court's Construction*: "A selectable user interface included on a page appearing on a computer screen that may be selected by the customer in order to seek help from the call center."

During oral argument, the parties agreed to the following construction: "A selectable user interface included on a page appearing on a computer screen that may be selected by the customer in order to seek help from the call center."

2. "help request form," "help request," and "requests for help"

    a. *Plaintiff's proposed construction*: <u>Help request form</u>: "A form which is manually filled out by a customer or created automatically representing a request for help." <u>Help request & requests for help</u>: Plain and ordinary meaning.

    b. *Defendants' proposed construction*: "A structured document with one or more data fields reserved for entering information related to the request for help."

    c. *Court's Construction*: "A form that in part includes one or more data fields reserved for entering information related to the request for help that is either manually filled out by a customer or automatically filled out."

During oral argument, the parties agreed to construe "help request form" as: "A form that in part includes one or more data fields reserved for entering information related to the request

3

for help that is either manually filled out by a customer or automatically filled out." The Court sees no reason to construe "help request" and "requests for help," both of which should be given their plain meaning. Where the patentee meant to use the term "form," he did so.

   3. "server" and "the server"

      a. *Plaintiff's proposed construction*: "A computer system, including one or more computers and programs, that provides services to other computer systems over a network."

      b. *Defendants' proposed construction*: "A server is a computer or a program that provides specific requested services to a client through messages passing between the client and the server over a network, using a predetermined protocol to encode the client's requests and the server's responses. Each server that performs the first recited function must also itself perform the other recited function(s)."

      c. *Court's Construction*: "A computer system, including one or more computers and programs, that provides services to other computer systems over a network."

There are two disputes here: whether a server is limited to one computer and whether the incorporation of "predetermined protocol" is proper. Defendants agree that a server is not limited to one computer (D.I. 401, p. 23), but argue that each server that performs the first function must also perform the other recited functions. This is redundant of the claim language. For instance, claim 9 of the '231 patent claims, "An automated call distribution system comprising a server...the server being for providing network service to a customer terminal, the server comprising one or more pages downloadable to the customer...." (12:19-23 of '231 patent).[3] It is clear that "the server," in each instance, refers back to "a server."[4]

   4. "help request form including the customer IP address"

      a. *Plaintiff's proposed construction*: "A form which is manually filled out by a

---

[3] To the same effect, *see* claim 1 of the '043 patent and claim 9 of the '286 patent.
[4] The Federal Circuit's approval of virtually the same construction in an unrelated patent, *see Verizon v. Vonage Holdings*, 503 F.3d 1295, 1303 (Fed. Cir. 2007), is of no assistance, since constructions must be made in the context of the patent-in-suit.

customer or created automatically representing a request for help including an Internet Protocol (IP) address that identifies the customer's computer equipment on a computer network."

   b. *Defendants' proposed construction*: "A structured document with one or more data fields reserved for entering information related to the request for help, where one of the data fields includes the customer IP address."

   c. *Court's Construction*: Plain and ordinary meaning.

In actuality, the only argument here is over the term "including," as the other arguments relate to "help request form" or "customer IP address." The parties dispute whether the customer IP address must be identified in the data field. The Defendants argue that to overcome prior art during reexamination, the Patent Office construed the term to require that the customer IP address be identified in the data field. Plaintiff contends that "including" be construed according to the plain and ordinary meaning of "including." I agree with Plaintiff.[5]

5. "upon selection of the remote help option, send a help request to the call center"

   a. *Plaintiff's proposed construction*: "Upon selection of a portion of a user interface that may be selected by the customer to obtain help, send a help request to one or more computer systems connecting live agents to customers through one or more communication channels."

   b. *Defendants' proposed construction*: "The help request is sent to the call center immediately after the selection of the remote help option by the customer, without the user of the customer terminal entering any information into a help request form."

   c. *Court's Construction*: "The help request is sent to the call center immediately after the selection of the remote help option by the customer, without the user of the customer terminal entering any information into a help request form."

The issue here is whether "upon" requires an immediate reaction. Plaintiff contends that "upon" means "after." Defendants argue that it implies an immediate reaction. The word "upon" occurs only three times in the specification. The first time, the specification uses the word

---

[5] If in fact the plain meaning does not overcome the prior art, I would imagine the patents will eventually be declared invalid.

5

"upon" in reference to a description of the prior art, where a system allows for telemarketing agents who are answering calls for multiple campaigns "to be set up automatically in their computing environment at the correct campaign based upon the phone number dialed by the customer." (1:50-60 of '231 patent). The second time, the specification states that, "Upon selection of the 'Live Help' option, default values together with the relevant URL are filled in automatically, and the request is immediately sent off." (6:60-64 of '231 patent). The third time, the specification states that "upon answering the call and viewing the customer relevant data simultaneously...the agent greets the caller..." (9:20-24 of '231 patent). The first use of the term "upon," is not helpful, as it is used as a synonym for "on." However, the second two uses of the term both imply an immediate reaction, *i.e.*, "thereupon."[6] It seems clear that the patentee, in common with the dictionary definition, used the term "upon" to refer to an immediate reaction. Indeed, the second use of the term is clearly used to describe the embodiment claimed in claim 9 of the '231 patent and claim 9 of the '286 patent.

6. "a contact channel"

   a. *Plaintiff's proposed construction*: "A specific means of communication between the customer and a sales/service provider."

   b. *Defendants' proposed construction*: "A dedicated communication path established for audio communications between the customer and an agent (e.g., virtual circuit)."

   c. *Court's Construction*: "A specific means of communication between the customer and a sales/service provider."

Pragmatus argues that the patentee defined this term in the specification and that it is improper to import a requirement for a dedicated audio communication path. Pragmatus takes

---

[6] The dictionaries I consulted do not show "upon" being used correctly in the sense that Plaintiff suggests. For example, the online "American English" Macmillan Dictionary gives only one possibly relevant definition: "immediately after doing something or after something happens." *Upon Definition*, Macmillan Dictionary, http://www.macmillandictionary.com/us/dictionary/american/upon (last visited Sept. 8, 2014).

6

issue with the inclusion of both "dedicated" and "audio." Defendants argue that to have other than PSTN or VOIP would be indefinite because this term is used in a means plus function limitation. Defendants contend that those two methods are the only way the patent discloses the call center contacting the customer. I disagree with Defendants. Plaintiff's proposed construction is taken directly from the specification. (2:4-20 of '231 patent). The claims contemplate that there are methods other than PSTN and VOIP which constitute contact channels. For instance, claim 11 of the '231 patent states that the contact channel is an IVR callback system. (12:39-40 of '231 patent). Additionally, the canon of claim differentiation lends support to "contact channels" comprising more than PSTN or VOIP. For instance, claims 9 and 10 of the '286 patent are identical save for the remote help option providing for "a plurality of different contact channels" (12:27-29 of '286 patent) or "the selection of either a voice over IP connection or a PSTN connection as the contact channel." (12:43-45 of '286 patent). Furthermore, claim 17 of the '286 patent states contact channels "comprise at least WWW, voice mail, IVR and E-mail." (13:30-32 of '286 patent).

7. "[the call center comprising] means operable to receive the help request and to contact the user of the customer terminal using the contact channel identified in the help request"

   a. *Plaintiff's proposed construction*: <u>Function</u>: Receive the help request and to contact the user of the customer terminal using the contact channel identified in the help request. <u>Corresponding Structure</u>: Multimedia message manager 50 and equivalents.

   b. *Defendants' proposed construction*: <u>Function</u>: The call center receives a help request and then initiates communication with the user of the customer terminal through the contact channel identified in the help request. <u>Corresponding Structure</u>: 1. The HTTP server 46, the CGI (Common Gateway Interface) programs 48, the data net 44, the outbound dialing system 32, and the ACD system 34 (on a digital switch -- either PBX, centrex or computer based) connected to the PSTN 9 whereby the help request identifies a PSTN phone number in a data field; and 2. The HTTP server 46, the CGI (Common Gateway Interface) programs 48, the data net 44, the outbound dialing system

7

32, and Voice over Internet Protocol ("VoIP") hardware and software, whereby the help request identifies a VOIP address in a data field.

c. *Court's Construction*: <u>Function</u>: To receive the help request and to contact the user of the customer terminal using the contact channel identified in the help request. <u>Corresponding Structure</u>: 1. The HTTP server 46, the CGI (Common Gateway Interface) programs 48, the data net 44, the outbound dialing system 32, and the ACD system 34 (on a digital switch -- either PBX, centrex or computer based) connected to the PSTN 9 whereby the help request identifies a PSTN phone number in a data field; or 2. The HTTP server 46, the CGI (Common Gateway Interface) programs 48, the data net 44, the outbound dialing system 32, and Voice over Internet Protocol ("VoIP") hardware and software, whereby the help request identifies a VOIP address in a data field; and structural equivalents.

During oral argument, Defendants agreed with Plaintiff's proposed function and agreed to change "and" to "or" in their proposed structure to differentiate between communication via PSTN or voice over IP. Pragmatus does not object to inclusion of HTTP server 46 as part of the corresponding structure, but contends that MMM 50 is the only other part of the corresponding structure. I disagree that MMM 50 is part of the corresponding structure. The specification describes MMM 50 as optional in two places. The first reference of MMM 50 states that, "It may also include a multimedia message management system **50**...." (5:57-60 of '231 patent). While Plaintiff's counsel contended that the use of the term "may" was not dispositive, the ordinary meaning of "may" implies that it is optional. This is made clear by the following paragraph:

> When the option is provided to the customer of selecting a time preferred for call-back, a more sophisticated message management system is required. For this purpose, the invention provides a method of managing the integration of connection of customers using various services (WWW servers, voice-mail, IVR, e-mail, etc) to an ACD call centre agent. This multimedia message management system **50** will be referred to herein as the "Multimedia Message Manager" (MMM) **50**.

(7:12-21 of '231 patent). As the MMM 50 is optional, it cannot be part of the required corresponding structure. *See Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1299 (Fed. Cir. 2005) ("[S]tructure disclosed in the specification must be clearly

8

linked to and capable of performing the function claimed by the means-plus-function limitation."). Conversely, Defendants' proposed structure is clearly linked to the function. *See* '231 patent at 5:37-47, 6:1-34, 6:65-7:60. Additionally, I include "equivalents" in the corresponding structure as means plus functions claims are to "be construed to cover the corresponding structure... described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6.

8. "the remote help option provides for the selection of one of a plurality of different contact channels"

   a. *Plaintiff's proposed construction*: "The portion of a user interface that may be selected by the customer to obtain help provides for the selection of one of a plurality of specific means of communication between the customer and a sales/service provider."

   b. *Defendants' proposed construction*: "The remote help option causes two or more different contact channels to be displayed on the customer terminal so that the customer can choose from among the displayed options, and have the call center initiate contact with the customer using the chosen contact channel."

   c. *Court's Construction*: Plain and ordinary meaning.

As I have construed the terms "remote help option" and "contact channel," there is little left to construe in this term. I therefore give this term its plain and ordinary meaning.

9. a WWW server comprising "means for providing access by customers to a web page including a help request interface for receiving requests for help from customers"

   a. *Plaintiff's proposed construction*: <u>Function</u>: Providing access by customers to a web page including a help request interface for receiving requests for help from customers. <u>Corresponding Structure</u>: HTTP server 46 connected to an Internet access line 47, an HTML page 53 having a "Live Help" option and equivalents.

   b. *Defendants' proposed construction*: <u>Function</u>: Providing access by customers to a web page and receiving requests for help from customers. <u>Corresponding Structure</u>: HTTP server 46 connected to an Internet access line 47, an HTML page 53 having a "Live Help" option and HTML help request form 54 that

9

identifies a contact channel in a data field for providing the requested help, all of which are included within WWW server 28.

c. *Court's Construction*: <u>Function</u>: Providing access by customers to a web page including a help request interface for receiving requests for help from customers. <u>Corresponding Structure</u>: HTTP server 46 connected to an Internet access line 47, and an HTML page 53 having a "Live Help" option and HTML help request form 54; and structural equivalents.

It is unclear that there is any significant difference between the two proposed functions. Pragmatus' proposal is taken from the claim language. Defendants' proposed function omits "including a help request interface." Yet Defendants' proposed structure includes "an HTML page 53 having a 'Live Help' option." Defendants are suggesting structure that seems to fit better with Plaintiff's function. Therefore I adopt Plaintiff's proposed function, which more accurately reflects the claim language, and Defendant's structure as it pertains to Plaintiff's proposed function.

I do not include the WWW server 28 as part of the corresponding structure, as the claim discloses a WWW server. The WWW server comprises the means. It therefore would be redundant to say "all of which are included within WWW server 28," as part of the corresponding structure. I also include HTML help request form 54 as part of the corresponding structure, because the specification teaches that, "The customer then sends this completed HTML help request off to the WWW server **28** where it is received by the HTTP server **46** and time-stamped." (6:24-26 of '231 patent). Therefore, the HTML help request form 54 is clearly linked to the "help request interface for receiving requests for help from customers."

10. "CGI programs"

a. *Plaintiff's proposed construction*: "Programs for passing commands from a script in a web page on a web server to a compiled executable application."

b. *Defendants' proposed construction*: "A method, in accordance with industry standard RFC 3875, for passing commands from a script in a web page on the

10

>     WWW server, to a compiled executable application, which is loaded outside of the WWW server."
>
> c. *Court's Construction*: "Programs for passing commands from a script in a web page on a web server to a compiled executable application."

Upon initially reading the proposed constructions, it appeared that Defendants contended that the CGI programs were loaded outside of the WWW server. This is clearly not the case, as the specification states that, "The [WWW] server **28** includes an HTTP server **46** connected to an Internet access line **47** for receiving requests for help, and CGI (Common Gateway Interface) Programs **48** for communicating with the call centre **24**." (5:54-58 of '231 patent). However, upon further reading, it appears that Defendants merely contend that the "compiled executable application" is loaded outside of the WWW server. While that may be correct, the claims do not require this limitation. Thus, Defendants' proposed construction is not supported by the intrinsic evidence. The language of the Defendants' construction is at best unclear, and the incorporation of an industry standard does not have a basis in the specification nor does it help the jury. I therefore adopt Plaintiff's proposed construction.

> 11. "automated call distribution system"
>
> a. *Plaintiff's proposed construction*: "System that automatically distributes incoming calls to available agents."
>
> b. *Defendants' proposed construction*: "System that automatically distributes incoming telephony calls to available agents."
>
> c. *Court's Construction*: "System that automatically distributes incoming voice calls to available agents."

The first reference to "automatic call distribution" in the patent discusses customers calling an "800 number to gain access…to an ACD (Automatic Call Distribution) centre." (1:36-39 of '231 patent). Indeed, the specification is replete with references to ACD agents verbally conversing with customers. *See* '231 patent at 2:53-54 ("a customer in voice conversation with

11

an ACD agent"), 5:22-24 ("An agent workstation **12** is equipped with an ACD telephone set **14** from which a variety of calls can be answered...."), 10:47-48 ("Both parties are conversing...."), 10:62-63 ("The agent can then walk the customer through information and supplement it verbally...."). It is clear that while an ACD may deal with more than just telephony calls, as Plaintiff points out, the ACD must have the capability to distribute incoming voice calls. Because the ACD clearly has the capability of dealing with calls other than PSTN, I do not use the term "telephony." Defendants agree that "telephony" could refer to both PSTN and voice over IP, but I believe the term "voice" adequately captures both while being more understandable to a jury.[7]

12. "call center" / "call centre"

   a. *Plaintiff's proposed construction*: "One or more computer systems connecting live agents to customers through one or more communication channels."

   b. *Defendants' proposed construction*: "Centralized location with live agents and telephony system for receiving a customer's help request and then responding by placing an audio call to the customer."

   c. *Court's Construction*: "A location with computer and telecommunications equipment through which live agents and customer can speak."

The specification makes clear that live agents need not be present at the call center:

> The call centre's **24** WWW server **28** may actually be located at the call centre, or it could be located remotely. Likewise, the ACD agent workstation **12** may be located in the call centre. Alternatively, the ACD agent workstation may be in locations remote from the call centre such as in an individual agent's home or remote workplace.

(4:61-67 of '231 patent). Therefore, Defendants' proposed construction that the agents be present at the call center is not supported by the specification. Additionally, the specification makes clear that call centers contain both telephony equipment and computer equipment. *See* '231 patent at

---

[7] Thus, Defendants' construction captures the plain meaning of the term to a person of ordinary skill in the art in 1995 reading the patent. That the claims involving ACD do not specifically reference "voice" does not change the meaning of ACD.

12

1:24-26 ("Call centre technology generally uses both computer equipment and telecommunications equipment with [Computer Telephony Integration] being a key element of productive call centres."). The Court's construction attempts to clarify that a call center is the location containing the computer and telephony systems which allow the live agents to speak to customers.

       13. "customer IP address"

          a. *Plaintiff's proposed construction*: "An Internet Protocol (IP) address that identifies the customer's computer equipment on a computer network."

          b. *Defendants' proposed construction*: "An Internet Protocol (IP) address that uniquely identifies the customer's computer on a computer network."

          c. *Court's Construction*: "An Internet Protocol (IP) address that identifies the customer's computer equipment on a computer network."

It is not readily apparent why this phrase need be construed. It was of sufficiently little importance that it was not addressed at the *Markman* hearing. Much of the briefing was dedicated to the difference between dynamic and static IP addresses, and whether a dynamic IP address can uniquely identify a customer's computer. I agree that for the time that an IP address is assigned to a computer, the IP address uniquely identifies the computer. But the computer does not always have the same IP address and that IP address might at another point in time be assigned to a different computer. Therefore it cannot "uniquely" identify the computer. I therefore adopt Plaintiff's proposed construction.

### III. CONCLUSION

Within five days the parties should submit a proposed order, consistent with this opinion, suitable for submission to the jury, construing the terms.

13