IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PRAGMATUS TELECOM LLC,

                    Plaintiff,

      v.

NEWEGG INC.,

                    Defendant.

Civil Action No. 12-1533-RGA

MEMORANDUM OPINION

Brian E. Farnan, Esq., Michael J. Farnan, Esq., FARNAN LLP, Wilmington, DE; Marc. C. Belloli, Esq. (argued), Yakov Zolotorev, Esq.; FEINBERG DAY ALBERTI & THOMPSON LLP, Menlo Park, CA.

Attorneys for Plaintiff.

Dominick T. Gattuso, Esq., PROCTOR HEYMAN LLP, Wilmington, DE; Daniel H. Brean, Esq. (argued), THE WEBB LAW FIRM, Pittsburgh, PA.

Attorneys for Defendant.

February 18 , 2016

ANDREWS, U.S. DISTRICT JUDGE:

Presently before the Court are Defendant Newegg Inc.'s Motion for Costs (D.I. 230) and Motion for Attorneys' Fees (D.I. 231).[1] For the reasons that follow, I will grant Newegg's Motion for Costs but deny Newegg's Motion for Attorneys' Fees.

## I.     PROCEDURAL BACKGROUND

Plaintiff Pragmatus Telecom LLC brought this suit against Newegg on December 12, 2012 in the United States District Court for the Central District of California, alleging that Newegg's use of live chat technology on its website infringed U.S. Patent Nos. 6,311,231 ("the '231 patent), 6,668,286 ("the '286 patent"), and 7,159,043 ("the '043 patent"). (C.A. No. 2:12-10629-JAK, D.I. 1 (C.D. Cal. Dec. 12, 2012)). The case was transferred to this Court on August 19, 2013 after the parties stipulated to the transfer. (C.A. No. 2:12-10629-JAK, D.I. 50 (C.D. Cal. Aug. 19, 2013)). Suppliers of the live chat technology used by Newegg on its website subsequently filed declaratory judgment actions against Pragmatus in this Court and reached settlements with Pragmatus. Believing that, in light of the settlements with the suppliers, "the activities that [were] the basis of its infringement allegations against Newegg [were] now licensed," Pragmatus filed an unopposed Motion to Dismiss pursuant to Federal Rule of Civil Procedure 41(a)(2), on February 12, 2014. (D.I. 210 at 1). The motion was granted that same day. (D.I. 212).

Newegg subsequently moved for costs (D.I. 230) and attorneys' fees (D.I. 231). The matter was fully briefed (D.I. 232, 293, 295, 315, 316, 336) and the Court heard oral argument on June 26, 2014 (D.I. 383). On July 25, 2014, this Court issued a memorandum opinion denying Newegg's motions on the ground that it was not a prevailing party under 35 U.S.C. §

---

[1] Unless otherwise specifically noted, all references to the docket refer to Civil Action No. 12-1533-RGA.

285 and Federal Rule of Civil Procedure 54(d)(1).  (D.I. 399).  The United States Court of Appeals for the Federal Circuit subsequently reversed that decision, holding that "Newegg must be regarded as the prevailing party in the underlying litigation," and remanding the case for a determination of "whether Newegg is entitled to attorney fees and costs . . . ."  (C.A. No. 2014-1777, D.I. 52-2 at 6 (Fed. Cir. July 31, 2015)).  On remand, no additional briefing was submitted, but this Court held oral argument on December 2, 2015.  (D.I. 522).  Having not previously reached the issue of whether this case is "exceptional" under 35 U.S.C. § 285 in the first memorandum opinion, the main issue before the Court on remand is whether the case is exceptional.

## II.    LEGAL STANDARD

The Patent Act provides, "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.  Thus, under the statute there are two basic requirements: (1) that the case is "exceptional" and (2) that the party seeking fees is a "prevailing party."  The Supreme Court recently defined an "exceptional" case as "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).  District courts should determine whether a case is "exceptional" in the exercise of their discretion, on a case-by-case basis, considering the totality of the circumstances. *Id.*  Relevant factors for consideration include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756 n.6 (internal quotations marks

2

omitted).  A movant must establish its entitlement to attorneys' fees under § 285 by a

preponderance of the evidence.  *Id.* at 1758.

## III.   DISCUSSION

### A.   Motion for Attorney Fees

Newegg proffers a number of reasons for the Court to declare this case exceptional.

These arguments are best addressed separately by whether they assert bad faith and "the

unreasonable manner in which the case was litigated" or critique "the substantive strength of

[Pragmatus'] litigating position . . . ."  *Octane Fitness*, 134 S. Ct. at 1756.

#### 1.   "The Unreasonable Manner in Which the Case was Litigated"

In *Octane Fitness*, the Supreme Court clarified that a party's litigation conduct need not

be independently sanctionable in order to justify an award of attorney fees under § 285.  *Octane*

*Fitness*, 134 S. Ct. at 1757 ("[A] district court may award fees in the rare case in which a party's

unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so

'exceptional' as to justify an award of fees.").  Recently, however, the Federal Circuit held that

*Octane Fitness* "gave no indication that [the Federal Circuit] should rethink [its] litigation

misconduct line of § 285 cases" and stated that "district courts can turn to [] pre-*Octane Fitness*

case law for guidance" regarding such arguments.  *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d

1344, 1349 (Fed. Cir. 2015).  "[L]itigation misconduct and unprofessional behavior may suffice,

by themselves, to make a case exceptional under § 285."  *Monolithic Power Sys., Inc. v. O2*

*Micro Int'l Ltd.*, 726 F.3d 1359, 1366 (Fed. Cir. 2013) (internal quotation marks omitted).

"[M]any forms of misconduct can support a district court's exceptional case finding,

including . . . litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a

frivolous suit; or willful infringement."  *Id.*  In *Monolithic Power*, the Federal Circuit upheld a

3

district court's exceptional case finding based on "an overall vexatious litigation strategy and numerous instances of litigation misconduct . . . ." *Id.* at 1367. The plaintiff in *Monolithic Power* offered false testimony, attempted to cover up its false testimony, and engaged in a litigation strategy—over the course of a decade—of suing the same accused infringer's customers to prompt a declaratory judgment action from the supplier, only to move to dismiss the cases on the eve of trial. *See id.* Likewise, in *Eon-Net LP v. Flagstar Bancorp*, the Federal Circuit upheld a district court's exceptional case determination based upon "[plaintiff's] pursuit of baseless infringement claims, [] improper purpose of bringing the lawsuit against [defendant] to obtain a nuisance value settlement, [] destruction of evidence, and []offensive litigation tactics." 653 F.3d 1314, 1320, 1324–26 (Fed. Cir. 2011).

Here, Newegg argues that "Pragmatus engaged in a vexatious litigation strategy" and brought this case "in bad faith for the sole purpose of extracting a nuisance settlement rather than resolving a meritorious claim." (D.I. 232 at 23). Newegg emphasizes that Pragmatus filed 70 infringement actions across the country against customers who use the accused live chat technology on their websites—rather than the suppliers making and selling the technology—in a ploy to get the suppliers to intervene and pay for settlement licenses. (*Id.* at 7–8, 23). Newegg further asserts that Pragmatus' lack of diligence in discovery and deficient infringement contentions demonstrate a lack of intent to ever pursue this case on the merits. (*Id.* at 9–12). Lastly, Newegg argues that Pragmatus' initial opposition to Newegg's motion to transfer the case to this district, followed by its later stipulation to the transfer, demonstrate Pragmatus' intent to delay the case and force Newegg to incur considerable litigation expense. (*Id.* at 12–13). Pragmatus responds that it only stipulated to the transfer because this Court lifted its stay pending reexamination. (D.I. 293 at 11). Pragmatus further asserts that it received core

4

technical documents from Newegg pursuant to District of Delaware Local Rules and had no need to serve additional discovery on Newegg when settlements with its suppliers were imminent. (*Id.* at 11–12).

First, I decline to ascribe an improper motive from Pragmatus' decision to oppose transfer to this Court and to later change its mind. Newegg moved to transfer the case to this Court on July 1, 2013. Pragmatus filed an opposition two days after, but later stipulated to the transfer on August 19, 2013. (C.A. No. 2:12-10629-JAK, D.I. 37, 40, 49 (C.D. Cal.)). I lifted a stay pending reexamination of the patents-in-suit in various related cases on July 3, 2013. (C.A. No. 12-1539-RGA, D.I. 25 (D. Del. July 3, 2013)). Parties often change their minds with regard to strategic maneuvering throughout litigation. Pragmatus' explanation of its decision to stipulate to the transfer seems plausible. I decline to find a nefarious motive from these circumstances, as doing so would require a quite speculative inference.

Second, having not presided over a discovery dispute between the parties, it is difficult to conclude that Pragmatus' discovery practices rose to a level of litigation misconduct. Pragmatus points out that it was in settlement talks with Newegg's suppliers, which suggested settlement was imminent, and that the discovery deadline was still eight months away. (D.I. 293 at 12). While Newegg points to Pragmatus' responses to initial written discovery (D.I. 232-2 at 32–62) and a few email threads where counsel for Pragmatus appears to have been somewhat unresponsive (D.I. 232-2 at 63–79), Newegg has not presented sufficient facts to the Court to separate this case from the mine-run of cases where parties squabble over and delay their discovery obligations.

Third, Pragmatus' infringement contentions hardly seem deficient for the early stages of litigation. Contrary to Newegg's assertions, they provide more than just a "series of screenshots

5

within claim charts." (D.I. 232 at 10). Instead, the claim charts go through each of the patents-in-suit, limitation by limitation, while providing both pictures of the accused website and at least a paragraph of explanation for why each limitation is met. (D.I. 232-2 at 85–149). Newegg's arguments simply nitpick at details it wanted clarified.

At bottom, the core of Newegg's motion revolves around its argument that this lawsuit was brought "for the sole purpose of extracting a nuisance settlement rather than resolving a meritorious claim." (D.I. 232 at 23). While Newegg criticizes Pragmatus for bringing suit against customers who use the live chat technology, rather than the suppliers who make and sell the technology, I cannot find this case exceptional simply because Plaintiff did something that is expressly allowed and contemplated by the Patent Act. *See* 35 U.S.C. § 271(a) ("[W]hoever without authority . . . uses . . . any patented invention, within the United States . . . infringes the patent."). Unlike in *Monolithic Power* or *Eon-Net*, Newegg does not persuasively point to any recurring patterns in Pragmatus' litigation conduct, nor to any other aggravating factors—such as false testimony, destruction of evidence, or offensive conduct—that led those courts to find litigation misconduct. *See Monolithic Power*, 726 F.3d at 1366–67; *Eon-Net*, 653 F.3d at 1320, 1324–26. Here, the evidence Newegg presents to establish litigation misconduct would require the Court to make speculative inferences from behavior that could conceivably indicate a plethora of motivations. Moreover, Pragmatus' settlements with the supplier defendants in the record do not appear to be for trivial sums. Pragmatus received $5,825,000 in consideration for its settlements with three suppliers of the technology, and not all of Pragmatus' supplier settlements appear in the record. (D.I. 232-1 at 8, 15, 28, 36; D.I. 294-1 at 7).[2]

---

[2] I am cognizant of the fact that these settlements resolved many of the underlying customer suits as well, as Newegg points out. (D.I. 315 at 7). Yet Newegg makes no attempt to quantify the value of the settlements per customer defendant, instead resorting to the conclusory argument that, when viewed in light of there being numerous customer defendants in the various suits, these settlements are for "nuisance amounts." (*Id.*). Looking at the nearly

Lastly, the Federal Circuit recently rejected similar arguments by Newegg in another

case:

> Newegg asserts that SFA brought this suit for the improper purpose of obtaining a
> nuisance value settlement. . . . As evidence, Newegg submitted the settlement
> amounts that SFA received from previous accused infringers, which, according to
> Newegg, were all substantially below the cost of defending a patent litigation suit
> and below what SFA could have recovered in damages if it had prevailed in those
> actions. Newegg proffered no other evidence regarding SFA's motivations. . . .
>
> We agree with Newegg, accordingly, that a pattern of litigation abuses
> characterized by the repeated filing of patent infringement actions for the sole
> purpose of forcing settlements, with no intention of testing the merits of one's
> claims, is relevant to a district court's exceptional case determination under § 285.
> . . . The problem with Newegg's request that we reverse the district court's
> exceptional case determination on these grounds, however, is its failure to make a
> record supporting its characterization of SFA's improper motivations.
>
> Newegg argued to the district court that SFA engaged in a vexatious litigation
> strategy based on evidence that: (1) SFA dismissed its claims against Newegg once
> it was faced with the prospect of a trial in which the merits of its claims would be
> tested; (2) SFA sued many defendants for infringement of the same patents; and (3)
> SFA frequently settled with prior defendants for relatively small amounts. On this
> record, we cannot say that the district court abused its discretion in finding that
> Newegg's evidence was insufficient to show that SFA actually litigated this case in
> an "unreasonable manner."

*SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1349–51 (Fed. Cir. 2015) (citations omitted).

Here, Newegg proffers nearly identical arguments, while pointing to evidence of the same

character and level of generality. Accordingly, under the totality of the circumstances, I

conclude that Newegg has failed to present a sufficient record for this Court to find that

Pragmatus litigated this case in an unreasonable manner.

## 2.  "The Substantive Strength of a Party's Litigating Position"

In *Octane Fitness*, the Supreme Court rejected as "overly rigid" and "too restrictive" the

Federal Circuit's previous § 285 case law requiring "*both* that the litigation is objectively

---

$6 million in settlement payouts—without any testimony concerning the relative value that the live chat technology provides per customer defendant or how many customer cases these settlements actually mooted—Newegg's threadbare conclusion that these cases were settled for nuisance value lacks sufficient factual support.

baseless *and* that the plaintiff brought it in subjective bad faith." *Octane Fitness*, 134 S. Ct. at

1756–57. Instead, it held that "a case presenting either subjective bad faith or exceptionally

meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award."

*Id.* at 1757. Because I have not construed any terms or rendered any decision on the merits of

any substantive issue in this case, Newegg is essentially forced to start from scratch in its efforts

to argue that Pragmatus' case was meritless.

Newegg argues that, even under Pragmatus' proposed constructions, there is no

reasonable basis to find infringement of any of the three asserted patents, because the patents

refer to call centers and therefore do not contemplate live textual chat. (D.I. 232 at 14–15).

Newegg also points to two claim terms from independent claims of the patents-in-suit, which it

asserts are not met by Newegg's webpage.  (*Id.*)  Pragmatus responds by pointing to part of the

'286 patent's specification that contemplates the use of text in communications between a user

and a call center. (D.I. 293 at 14).  I find Newegg's non-infringement arguments to be cursory

and, even on their face, rather unpersuasive.  In any event, what is relevant to the present motion

is that Newegg's barebones non-infringement arguments do not come close to demonstrating that

Pragmatus' claims were exceptionally meritless. *See Octane Fitness*, 134 S. Ct. at 1757.

Newegg also argues that all three patents-in-suit are invalid. (D.I. 232 at 16–17).  It

argues that "Pragmatus's patents were allowed by the [PTO] under an erroneous application of

law" because three patents in the prior art disclose the same technology over a network rather

than the Internet, rendering Pragmatus' patents obvious under § 103. (*Id.* at 16).  Newegg also

argues that Pragmatus' patents are indefinite for including claims in means-plus-function form

that fail to disclose sufficient corresponding structure. (*Id.* at 17).  Pragmatus responds by

8

criticizing Newegg for arguing, without expert testimony or claim construction, that its presumptively valid patents are clearly obvious and indefinite. (D.I. 293 at 15–16).

Obviousness under § 103 is a question of law that must be evaluated in light of "the scope and content of the prior art, . . . differences between the prior art and the claims at issue . . . and "the level of ordinary skill in the pertinent art." *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966). Newegg does little to overcome the presumption of validity attached to all three patents, especially in light of the fact that all three patents-in-suit survived LivePerson's efforts to invalidate them during reexamination proceedings before the PTO. (C.A. 12-1539-RGA, D.I. 20-1, 20-2, 20-3 (D. Del. June 24, 2013)). In particular, the '043 patent appears to have survived specific § 103 obviousness challenges before the PTO. (C.A. 12-1539-RGA, D.I. 20-1 at 6–9 (D. Del. June 24, 2013)). Newegg essentially asks this Court to find three issued patents so clearly obvious as to render this case exceptionally meritless with one page of briefing and without any expert testimony. I do not see how I could conceivably do so based upon the sparse record Newegg provides.[3]

Newegg similarly dedicates only a footnote to its indefiniteness argument, yet the only claim language in the '043 patent it points to does even not contain the word "means," and would therefore require Newegg to overcome the presumption against means-plus-function claiming. *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015) (en banc) ("[T]he failure to use the word 'means' [] creates a rebuttable presumption . . . that § 112, para. 6 does

---

[3] In pointing out that there has been no claim construction, substantive briefing of merits issues, or expert testimony, I do not intend to categorically declare that a party could never obtain fees absent any sort of merits decision in a case. It is certainly difficult, however, to prove that a case is exceptionally meritless without such guideposts, especially one where the plaintiff has obtained numerous significant settlements. Moreover, Newegg has not located any case where a district court has ever found a case exceptional in the absence of a single decision on the merits. If a defendant could prove that patents-in-suit were plainly invalid on their face or that a plaintiff's infringement contentions manifestly stretched the bounds of credulity, certainly it could establish that a case was exceptional. Here, however, Newegg has simply failed to adequately prove that Pragmatus' case lacks merit.

not apply."). Newegg provides no argument at all to rebut the presumption that § 112, para. 6 does not apply to the '043 patent, rendering its assertion of readily discernible indefiniteness—as to make this case exceptional—exceptionally weak.[4]

At the end of the day, Newegg has not come close to demonstrating by a preponderance of the evidence that this case "stands out from others with respect to the substantive strength of [Pragmatus's] litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S. Ct. at 1756. Accordingly, I conclude that this case is not exceptional under § 285, and I will therefore deny Newegg's motion for attorneys' fees.

### B. Motion for Costs

"Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). Local Rule 54.1(a)(1) also provides that, "Unless otherwise ordered by the Court, the prevailing party shall be entitled to costs." D. DEL. LR 54.1. The Federal Circuit's decision dictates that Newegg is a prevailing party. Pragmatus nonetheless suggests that this Court should exercise its discretion to deny Newegg costs for various reasons. (D.I. 295 at 6). I decline to do so, as Pragmatus has not set forth any persuasive reason justifying a denial of costs. I will refer the proper calculation of costs to the Clerk of Court.

---

[4] With regard to whether claim limitations invoking § 112, para. 6 contain sufficient corresponding structure, the standard is whether "a person of ordinary skill in the art would be [able] to recognize the structure in the specification and associate it with the corresponding function in the claim . . . ." *Williamson*, 792 F.3d at 1352. Pragmatus' proposed constructions described what it asserted as corresponding structure for the claim limitations that did employ the word "means." (D.I. 232-2 at 216–18). Without any expert testimony or claim construction arguments, I decline to attempt to assess whether a POSITA would understand the '286 and '231 patents as disclosing sufficient corresponding structure, especially in the absence of any remotely persuasive indefiniteness argument as to the '043 patent.

10

## IV.    CONCLUSION

For the reasons set forth above, the Court will deny Newegg's Motion for Attorneys' Fees and grant Newegg's Motion for Costs.  A separate order, consistent with this Memorandum Opinion, will be entered.